# AFFIDAVIT OF ATF SPECIAL AGENT MATTHEW SHIBLEY

I, Matthew Shibley, having been duly sworn, on oath depose and state that:

1. I am employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") where I have worked for approximately eight years. During my law enforcement career, I have participated in investigations involving firearms and drug trafficking, firearms possession by prohibited persons, and the use of firearms in furtherance of drug trafficking crimes, many of which have occurred in and around Boston, Massachusetts.

2. Based on my training and experience, I am aware that Title 18, United States Code, Section 371 makes it a federal offense for any person to agree with at least one other person to violate the law, with one person committing at least one overt act in the furtherance of the agreement. I am also aware that Title 18, United States Code, 922(a)(1)(A) makes it a federal offense for any person except a licensed importer, manufacturer, or dealer to engage in the business of dealing in firearms without a license. Having so stated, I make this affidavit in support of a Criminal Complaint charging DEON YOUNG with conspiring to violate the law, and engaging in the business of dealing in firearms without a license.

3. The statements contained in this affidavit are based on my participation in this investigation, speaking with other ATF Agents involved in the investigation, and on information provided to me by officers of the Boston Police Department ("BPD"). This affidavit is submitted for the limited purpose of establishing probable cause to believe YOUNG violated 18 U.S.C. § 371 and 18 U.S.C § 922(a)(1)(a). It therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

4. The investigation into YOUNG began on September 19, 2016, when he provided a firearm and ammunition to TROY ARMSTRONG, who in turn sold it to an ATF cooperating witness ("CW") in the Charlestown area of Boston, MA. Over the following two months, on two occasions, YOUNG supplied ARMSTRONG with a firearm and ammunition, who in turn sold them to the CW. These controlled purchases were done under the supervision of myself and other law enforcement officers from the ATF and the BPD and were recorded on video.

5. On September 19, 2016, the CW told me that ARMSTRONG could introduce him/her to an individual (later identified as Deon YOUNG aka "Turtle") who would sell the CW a .45 caliber pistol for $1,100. ARMSTRONG said this person lived in Dorchester and would travel to Charlestown to make the sale. I instructed the CW to tell ARMSTRONG he/she could make the purchase later in the day. The CW complied with this request.

6. On September 19, 2016, at approximately 2:45 pm, SA Shervin Dhanani and I met the CW to plan for the controlled purchase of the .45 caliber pistol. During the meeting, the CW received a call from ARMSTRONG, who was calling from telephone number (617-862-0648). The CW answered and put his/her cell phone on speaker mode so SA Dhanani and I could listen to the conversation. ARMSTRONG asked the CW if he/she was ready to make the purchase. The CW replied yes. ARMSTRONG told the CW his "boy" (later identified as YOUNG) would be in Charlestown in twenty minutes. ARMSTRONG told the CW to meet him at his apartment (153 Bunker Hill Street, Charlestown, MA). The CW replied ok and ended the conversation.

7. SA Dhanani and I instructed the CW to utilize an ATF undercover (UC) vehicle, drive to meet ARMSTRONG, and purchase the .45 caliber pistol. I searched the CW and the ATF UC vehicle for contraband, with negative results. I equipped the CW with electronic recording equipment. SA Dhanani provided the CW $1,100 from Agent Cashier funds. Surveillance units

driving unmarked police vehicles took up positions around 153 Bunker Hill Street. I activated the CW's electronic equipment and instructed the CW to make the purchase.

8. After I reviewed the covert video recordings, I obtained investigators' observations and conducted a debrief with the CW. I learned that at 3:12 pm, the CW departed in the ATF UC vehicle towards ARMSTRONG's residence. The CW parked the UC vehicle near 153 Bunker Hill Street and called ARMSTRONG to tell him he/she arrived. ARMSTRONG entered the front passenger's seat of the UC vehicle. The CW and ARMSTRONG engaged in cordial conversation. ARMSTRONG indicated that the seller was on the way and should be arriving shortly. ARMSTRONG told the CW that the seller drove a Ford Explorer or Ford Expedition. At 3:40 pm, ARMSTRONG said he had to go back inside his apartment and check on his child, and he exited the vehicle. At 3:48 pm, ARMSTRONG returned to the UC vehicle and entered the front passenger's seat. ARMSTRONG said the seller texted him that he was two minutes away.

9. At 4:02 pm, a blue colored Ford Explorer (MA Registration 895-WZ2) arrived and parked near the UC vehicle. ARMSTRONG referred to this vehicle as the seller's. SA Keltar Mui identified that the vehicle was occupied only by the driver. The CW told ARMSTRONG to tell the driver to come inside the UC vehicle. ARMSTRONG exited the UC vehicle and walked to the Ford Explorer. At 4:04 pm, ARMSTRONG reentered the front passenger's seat of the UC vehicle. ARMSTRONG removed a silver and black colored pistol from his right side pants pocket and handed it to the CW. The CW took the pistol and examined it. ARMSTRONG then removed a white colored baggie from his left side jacket pocket and handed it to the CW. The CW took the baggie and examined it. The baggie contained rounds of ammunition. The CW asked ARMSTRONG if the seller was coming to the car. ARMSTRONG said he didn't want to.

The CW removed the pistol's magazine and racked the slide multiple times. The CW handed ARMSTRONG the $1,100 for the purchase of the firearm. ARMSTRONG took the money and counted it. The CW told AMRSTRONG he wanted to talk to the seller and repositioned the UC vehicle next to the Ford Explorer. ARMSTRONG then exited the UC vehicle with the $1,100. The CW yelled out of his window to the driver of the Ford Explorer and said he wanted to talk.

10. At 4:08 pm, the driver, later identified as YOUNG, exited the Ford Explorer and entered the front passenger's seat of the UC vehicle. The CW drove the UC vehicle around the block. The CW asked YOUNG how much money he wanted for the gun (referring to the .45 caliber pistol he received from ARMSTRONG). YOUNG replied "eleven". The CW told YOUNG a back-story about how he sends guns to Haiti and asked YOUNG if he had other guns for sale. YOUNG replied he was going to take a trip sometime in December to get more guns. YOUNG asked the CW if he/she was going to be around then. The CW replied yes, but he/she said that if YOUNG had anything else for sale now he should let the CW know. YOUNG replied that he could get a Tec-9 and then gave the CW his cell phone number: (857-349-5523). YOUNG said ARMSTRONG didn't tell him the CW wanted to buy more than one gun and that he could have sold the CW more guns if he knew he/she wanted to buy more. YOUNG told the CW about his access to guns and said he had a ".357" in the car that he just bought for "eleven". The CW replied ok and told YOUNG he wanted to make another purchase. YOUNG told the CW he would get back to him/her. The CW stopped the UC vehicle and YOUNG exited. The CW then traveled to a predetermined location to meet investigators.

11. I turned off the CW's electronic equipment and took from the CW's possession a Colt, model MKIV, .45 caliber pistol, with an obliterated serial number, and six rounds of .45 caliber ammunition (which were contained in a white colored baggie). I searched the CW's person and the UC vehicle for contraband with negative results. I transported all electronic and physical evidence back to the ATF office and logged them in as ATF evidence.

12. I queried MA Registration (895-WZ2) in the MA Registry of Motor Vehicles (RMV) and it identified a blue colored, 1998 Ford Explorer, registered to Denise YOUNG (dob xx/xx/1961). I queried the name Denise Young in the Accurint LexisNexis records database and discovered that the name Deon YOUNG was listed as her relative. I queried Deon YOUNG for a Massachusetts driver's license (DL) and it identified an active driver's license with a facial photograph for Deon YOUNG (B/M; dob xx/xx/1984; ssn xxx-xx-2093; Address – 99 Georgetowne Place, Hyde Park, MA). I compared the DL photograph of Deon YOUNG to a still photograph of the seller taken from the covert video recording. The photographs depict the same person.

13. On October 2, 2016, at approximately 7:00 pm, the CW had a recorded telephone conversation with YOUNG. The CW initiated the conversation by calling the number that YOUNG provided to him/her on September 19, 2016. During the conversation, YOUNG told the CW that he had a .45 caliber pistol to sell him/her for $900. The CW told YOUNG he/she would purchase it the following day (10/3/16). YOUNG replied all right and the call ended.

14. On October 3, 2016, at approximately 5:12 pm, the CW called YOUNG to get a status update regarding the .45 caliber pistol. YOUNG told the CW the person he was getting the gun from didn't want to drive to Charlestown. YOUNG said they could do the deal if the CW would drive to meet them. The CW told YOUNG he/she didn't have a car. YOUNG said he would try

to get the gun and deliver it to the CW. The CW replied all right and ended the call. No purchase occurred that day.

15. October 4, 2016, at approximately 8:30 am, the CW said YOUNG and ARMSTRONG had showed up at his apartment in Charlestown, MA and that YOUNG was in possession of the .45 caliber pistol. The CW, knowing he/she could not make the purchase without ATF approval, told YOUNG he/she wouldn't have the money until later in the afternoon. While ARMSTRONG and YOUNG were still in his/her apartment, the CW took a picture of the .45 caliber pistol with his/her cell phone and texted it to me. I told the CW via text message, as a way to arrange the deal for later in the day, that the CW should tell YOUNG he/she needed to go meet his/her cousin and get the money. The CW complied with this request. YOUNG told the CW he was going to leave the .45 caliber pistol with ARMSTRONG and the CW could just give the money to him. The CW said YOUNG and ARMSTRONG exited his/her apartment. I could identify the pistol from the cell phone photograph as a Hi-Point, model JHP, .45 caliber pistol, black in color and located inside a black colored plastic baggie.

16. On October 4, 2016, at approximately 3:30 pm, SA Shervin Dhanani and I met the CW to plan for the controlled purchase of the Hi-Point, .45 caliber pistol from ARMSTRONG. I instructed the CW to utilize an ATF UC vehicle and drive to ARMSTRONG's apartment to make the purchase (153 Bunker Hill Street, Charlestown, MA).

17. I searched the CW and the ATF UC vehicle for contraband with negative results. I equipped the CW with electronic recording equipment. SA Dhanani provided the CW $1,040 from Agent Cashier funds. Surveillance units driving unmarked police vehicles took up positions around 153 Bunker Hill Street. I activated the CW's electronic equipment and instructed the CW to make the purchase from ARMSTRONG.

18. When I later reviewed the covert video recordings, obtained investigators' observations, and conducted a debrief with the CW, I learned that at 3:43 pm, the CW departed in the ATF UC vehicle towards ARMSTRONG's residence. The CW parked the UC vehicle near 153 Bunker Hill Street and called ARMSTRONG to tell him he/she had arrived. ARMSTRONG told the CW he would be right out. At approximately 3:59 pm, ARMSTRONG entered the front passenger's seat of the UC vehicle. The CW and ARMSTRONG engaged in cordial conversation. ARMSTRONG told the CW that "he (referring to YOUNG) is right there and he just pulled up. He is with my sister." The CW then drove the UC vehicle on Bunker Hill Street and turned left on Concord Street. ARMSTRONG removed a brown paper bag from inside his jacket and handed it to the CW. The CW then stopped the UC vehicle on Concord Street next to YOUNG's vehicle (Ford Explorer, MA Registration 895-WZ2). The CW opened the front passenger's window and asked YOUNG to get into the UC vehicle. YOUNG replied no and told the CW he had to get going.

19. The CW then handed ARMSTRONG $1,040 for the purchase of the firearm. ARMSTRONG took the money and counted it. The CW continued driving the UC vehicle and circled the block back to Bunker Hill Street. While driving, the CW removed a black colored plastic baggie, that appeared to contain the firearm, from inside the brown paper bag. The CW and ARMSTRONG continued cordial conversation and ARMSTRONG told the CW he had nothing to do with this entire thing and he didn't make a dollar off of it. ARMSTRONG said he didn't get anything off of these deals. At approximately 4:02 pm, the CW stopped the UC vehicle and ARMSTRONG exited.

20. As this was occurring, Supervisory Special Agent Thomas Crowley observed that the Ford Explorer, bearing MA Registration 895-WZ2, parked on Concord Street. SSA Crowley observed an individual resembling YOUNG sitting in the driver's seat. SSA Crowley observed ARMSTRONG exiting the UC vehicle and then approaching the passenger's side of the Ford Explorer.

21. At approximately 4:07 pm, I met with the CW. I turned off the electronic equipment and took from the CW's possession a Hi-Point (Haskell), model JHP, .45 caliber pistol, bearing serial number X4162711, the electronic equipment, a brown paper bag and a black plastic baggie. I searched the CW's person and the UC vehicle for contraband with negative results. All electronics and physical evidence were then transported back to the ATF Boston II Field Office and logged into evidence.

22. Through a database query, I have learned that DEON YOUNG does not have a Federal Firearms License. I also have learned that YOUNG does not have a license to carry firearms or a firearm identification card in Massachusetts.

23. Based on the foregoing, I submit that there is probable cause to believe that, between on or about September 19, 2016 and on or about October 4, 2016, DEON YOUNG conspired with ARMSTRONG to violate the law and dealt in firearms without a federal firearms license, in violation of Title 18, United States Code, Section 371, and Title 18, United States Code, 922(a)(1)(A).

MATTHEW SHIBLEY
Special Agent, ATF

Sworn and subscribed to before me this 30th day of November, 2016

HON. DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE